Case 4:20-cv-02144   Document 19   Filed on 12/05/21 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
December 05, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| HOLCOMBE H.,[1] | § § § | |
| *Plaintiff,* | § § | No. 4:20-cv-2144 |
| v. | § § | |
| KILOLO KIJAKAZI,[2] Acting Commissioner of Social Security | § § § § | |
| *Defendant.* | § § § | |

## MEMORANDUM AND ORDER

Plaintiff Holcombe H. ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act ("the Act") based on a finding at step two that Plaintiff's disabilities were not severe.[3] ECF No. 1. Jurisdiction is predicated on 42 U.S.C. § 405(g). The Parties filed cross-

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] The suit was originally filed against Andrew Saul, the then-Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been automatically substituted as Defendant.

[3] On consent of the parties, the district judge to whom this case was assigned transferred the case to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order, ECF No. 14.

1

motions for summary judgment. Pl.'s Am. MSJ, ECF No. 17; Def.'s Cross-MSJ, ECF No. 18. Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. The issue before the Court is whether the Commissioner committed reversible error when he found Plaintiff's physical and mental impairments were not severe at step two of his analysis. Based on the briefing and the record, the Court finds that the Commissioner applied the wrong legal standard at step two and that the record does not support the ALJ's step two findings under the correct legal standard. Therefore, the Commissioner's decision is not supported by substantial evidence. Accordingly, the Court grants Plaintiff's motion for summary judgment and denies Defendant's motion for summary judgment.

## I. BACKGROUND

On April 18, 2019, Plaintiff filed his application for disability insurance benefits under Title II of the Act claiming he suffered both physical and mental impairments. R. 220–21. Plaintiff based[4] his application on lower back pain, tremors or shakes, nerve damage, injured lumbar spine, human immunodeficiency virus

---

[4] The relevant time period is January 1, 2018—Plaintiff's alleged onset date—through March 31, 2021—Plaintiff's last insured date. R. 17. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

("HIV"), bipolar I disorder, depressive disorder, visual and auditory hallucinations, suicidal thoughts, and poor vision. R. 66, R. 80, R. 95, R. 259. The Commissioner denied his claim initially, R. 66–93, and on reconsideration. R. 94–123.

Subsequently, an Administrative Law Judge ("ALJ") held a hearing, at which an attorney represented Plaintiff. R. 35. Plaintiff and a vocational expert testified at the hearing. R. 35. The ALJ issued a decision denying Plaintiff's request for benefits.[5] R. 12–28. The Appeals Council denied Plaintiff's request for review, thus upholding the ALJ's decision to deny disability benefits. R. 1–6.

Plaintiff challenges the ALJ's analysis and asks the Court to reverse and remand for an award of benefits, or, in the alternative, additional administrative proceedings. Pl.'s Amended Cross-MSJ Brief, ECF No. 17. Defendant counters, arguing that the ALJ's findings are proper and supported by substantial evidence. Def.'s Cross-MSJ, ECF No. 18; Def.'s Resp. in Opp. to Pl.'s Amended Cross-MSJ, ECF No. 18-1.

## II. STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a

---

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step two. R. 23. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since his alleged onset date. R. 17 (citing 20 C.F.R. 404.1571 *et seq*. and 416.971 *et seq*.). At step two, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments. R. 18 (citing 20 C.F.R. 404.1521 *et seq*. and 416.921 *et seq*.). Therefore, the ALJ concluded that Plaintiff was not disabled. R. 23.

party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.*

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza*, 219 F.3d at 393. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.  BURDEN OF PROOF

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or

5

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)).

The Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff challenges the ALJ's finding that he did not suffer from a severe impairment at step two, arguing that it lacked support in the record. ECF No. 17 at 3–10 To the contrary, Plaintiff maintains that the record contains sufficient evidence that his medical conditions are severe impairments. *Id.* at 3. The Commissioner counters that substantial evidence supports the ALJ's findings at step two and that

the ALJ committed no reversible error. ECF No. 18-1 at 12.

### A. The ALJ Erred At Step Two By Finding That Plaintiff's Physical and Mental Impairments Are Not Severe.

A claimant bears the burden of proving that he or she suffers from a disability; however, the mere presence of an impairment is not enough to establish that one is suffering from a disability. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Rather, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). Under the statute, an impairment must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Furthermore, an individual is "under a disability, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

"At step two of the disability analysis, the ALJ considers whether the claimant has a medically determinable impairment or combination of impairments that is severe." *Foster*, 2011 WL 5509475, at *11 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Thus, Plaintiff has the burden of proving that his medical condition

qualifies as severe. *See Stone*, 752 F.2d at 1105. Proving severity requires a two-step process: the severity requirement and the durational requirement. *Id.*

For the severity requirement, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (alteration in original) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). "Re-stated, an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Loza*, 219 F.3d at 391.

For the durational requirement, "a claimant need only show that an alleged impairment has lasted or can be expected to last for the twelve-month period," not that the impairment was itself severe for the entirety of the twelve months. *Craig v. Berryhill*, No. 17-CV-1715, 2019 WL 1387696, at *5 (W.D. La. Mar. 27, 2019) (quoting *Singletary*, 798 F.2d at 821). Therefore, the second step requires Plaintiff to make a "*de minimis* showing." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citing *Anthony*, 954 F.2d at 293 n.5) (italics added).

### 1. *The ALJ applied the wrong legal standard at step two.*

In his severity analysis, the ALJ articulated the wrong legal standard. The boilerplate "Applicable Law" section of the ALJ's decision notes that "[a]n

impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have *no more than a minimal effect* on an individual's ability to work." R. 16 (citing 20 C.F.R. §§ 404.1522, 416.922, SSR 85-28, SSR 16-3p) (emphasis added), R. 18 (finding that Plaintiff's impairments did not "*significantly* limit[]" his ability to perform basic work activities), R. 23 (same). [6]

The Fifth Circuit has held that an ALJ is presumed to have applied the incorrect severity standard "unless the correct standard is set forth by reference to [*Stone*] or another of the same effect[.]" *Stone*, 752 F.2d at 1105. The ALJ's standard neither refers to nor is consistent with *Stone*. *Foster*, 2011 WL 5509475, at *12–13. Interpreting this same language in 2011, Judge Ellison found that this standard recognized that a non-severe impairment could have a *minimal effect* on the plaintiff's ability to work, while *Stone* "brooks no tolerance for interference with a claimant's ability to work." *Id.* The Fifth Circuit recently stated that the *Stone* standard is "binding precedent" that requires an impairment be considered "severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work.'" *Salmond v. Berryhill,* 892 F.3d 812,

---

[6] Similarly, in his brief, the Commissioner cites the regulations and ignores the *Stone* standard for severity. *See, e.g.*, ECF No. 18-1 at 4 ("A severe impairment is an impairment which *significantly limits* a claimant's physical or mental abilities to do basic work activities.") (citing 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1522(a), 416.922(a)). This standard is inconsistent with *Stone*.

817 (5th Cir. 2018); *accord Foster*, 2011 WL 5509475, at *13 (noting the ALJ's failure to apply the *Stone* standard is a legal error and the Fifth Circuit mandated that the claim must be remanded).

As Judge Ellison found, the standard the ALJ articulated here is a more difficult standard of proof than the *de minimis* standard set forth in *Stone*. *Foster*, 2011 WL 5509475, at *12 (finding "the ALJ's standard recognized that a non-severe impairment could have a minimal effect on Plaintiff's ability to work, while *Stone* holds that a non-severe impairment would not be expected to interfere with Plaintiff's ability to work."). In fact, the standard the ALJ actually applied was even more difficult than his articulated standard because the ALJ found Plaintiff's impairments did not "significantly limit[] his ability to perform basic work activities." R. 16; *see Reece v. Saul*, No. 4:18-CV-02624, 2019 WL 3321718, at *4 (S.D. Tex. July 24, 2019) (holding that "significantly limits" is a "more difficult standard of proof" than the *de minimis* standard set forth in *Stone*).

Since the ALJ is presumed to have applied the wrong legal standard at step two, he committed reversible legal error when he found that Plaintiff's impairments are not severe and ended his analysis. *See Reece*, 2019 WL 3321718, at *4 (finding reversible harmful error where ALJ failed to cite to *Stone* at step two and did not continue past step two in the sequential evaluation process); *Foster*, 2011 WL

5509475, at 12–19 (collecting cases in which the ALJ applied the wrong standard at step two but continued the analysis).

### 2. *The record does not support the ALJ's findings at step two using the correct legal standard.*

Because the evidence sufficiently shows that Plaintiff's impairments are severe, substantial evidence does not support the ALJ's findings at step two using the standard set forth in *Stone*.

A. Plaintiff's physical impairments are severe under the *Stone* standard.

The record contains evidence of regular diagnosis and treatment for Plaintiff's physical impairments. In 2019, Dr. Elexis Mitchell diagnosed Plaintiff with chronic diastolic (congestive) heart failure,[7] and included a note in her records that in 2016 a physician told Plaintiff that he has left ventricle dysfunction.[8] In 2012 and again in 2019, Plaintiff was diagnosed with and treated for obesity or morbid obesity.[9] From 2017 to 2019, Dr. James Sims III diagnosed Plaintiff with and treated him for lumbago with sciatica.[10] In 2018 and 2019, Plaintiff was also diagnosed with and

---

[7] R. 778 (6/3/19) (Dr. Mitchell assessed Plaintiff with chronic diastolic (congestive) heart failure), R. 785 (5/9/19) (same).

[8] R. 784 (5/9/19).

[9] R. 699 (5/26/19) (Plaintiff treated for obesity), R. 709 (4/26/19) (same), R. 869 (9/10/19) (same), R. 880 (9/11/19) (same), R. 897 (5/26/19) (same), R. 1208 (8/28/12) (Plaintiff treated for morbid obesity).

[10] R. 413 (2/1/19) (Dr. Sims treated Plaintiff's lumbago with sciatica with medication), R. 433 (8/8/18) (same), R. 437 (3/15/18) (same), R. 441(1/1/18) (Dr. Sims referred Plaintiff to Pain

treated for lumbar radiculopathy and chronic back pain.[11] Medical records reflect that none of the medications Plaintiff received for his chronic back pain were particularly successful at controlling Plaintiff's pain.[12] Dr. J. Lance LaFleur noted that Plaintiff "has failed other conservative therapy [for pain] including OTC medication, [physical therapy], and prescription medication." R. 724 (9/10/18). Dr. Mitchell noted that Plaintiff suffers from "severe back pain and needs surgery." R. 774 (7/10/19). From December 2018 to September 2019, Plaintiff reported on multiple occasions to his physicians that his back pain was a 10 out of 10.[13] Objective evidence further supports Plaintiff's physical impairments. MRI scans, a CT scan, and an x-ray of Plaintiff's lumbar spine show that Plaintiff suffers from degenerative disc disease and some nerve impingement.[14]

---

Medicine for his lumbago with sciatica), R. 478 (5/5/17) (Dr. Sims treated Plaintiff's lumbago with sciatica with medication).

[11] R. 678 (7/25/19) (Dr. Thomas Jones diagnosed and treated Plaintiff for lumbar radiculopathy), R. 790 (10/14/19) (Dr. J. Lance LaFleur assessed Plaintiff with chronic pain syndrome and lumbar radiculopathy), R. 796 (9/18/19) (same), R. 800 (8/25/19) (same), R. 808 (6/24/19) (same), R. 843 (7/19/18) (Dr. J. Lance LaFleur assessed Plaintiff with and treated him for chronic pain syndrome and lumbar radiculopathy).

[12] R. 802 (7/24/19) ("Dr. [Thomas] Jones prescribed Tramadol 50 mg q8h but the patient states it does not help."), R. 806 (6/4/19) ("Today, the patient reports that the pain is a 10 out of 10 in severity with the current medication regimen."), R. 826 (12/26/18) (same).

[13] R. 677 (7/25/19) (10 out of 10), R. 794 (9/18/19) (10 out of 10), R. 798 (8/25/19) (10 out of 10), R. 802 (7/24/19) (10 out of 10), R. 806 (6/24/19) (10 out of 10), R. 826 (12/26/18) (10 out of 10).

[14] R. 675 (7/12/19) (MRI scan of Plaintiff's lumbar spine), R. 682 (7/12/19) (x-ray of Plaintiff's lumbar spine) R. 745 (12/17/18) (MRI scan of Plaintiff's lumbar spine), R. 772 (9/7/19) (CT scan of Plaintiff's lumbar spine).

Evidence shows that Plaintiff's physical impairments interfere with his ability to work. At the hearing, Plaintiff described the interference, explaining how his back problems make him unable to work. R. 44. Plaintiff stated that he has difficulty with walking, lifting, and carrying. R. 44–45. Plaintiff also stated that he has difficulty getting out of bed, has numbness in his legs with walking, and is at a high risk for falling. R. 46. He further said that he has difficulty getting up from the toilet and uses a shower chair. R. 49. Plaintiff testified that he has difficulty climbing stairs and requires the use of a ramp to get up the steps to his home. R. 50–51. Plaintiff stated that the most he can lift is a composition notebook. R. 47. In addition, Plaintiff relayed that he has stomach issues, requiring Plaintiff to use the restroom about five times a day, observing that his weight has decreased from 300 pounds to 220 pounds, and he feels fatigued and weak all the time. R. 52–53.

Plaintiff's medical records further describe the hindrance Plaintiff's physical impairments play in his life. Plaintiff reported to his physicians that his back pain is triggered by daily activities such as driving, walking, sitting, standing, and bending down.[15] Dr. LaFleur noted that Plaintiff described the pain as "tiring, exhausting, shock-like, shooting, spasms, squeezing, aching, throbbing, stabbing, sharp, and

---

[15] R. 679 (3/7/19) ("Mr. Holley reports pain is aggravated with daily activities such as walking, sitting, standing and bending down."), R. 728 (8/20/19) ("The patient states weight bearing, standing, driving, squatting, kneeling, sitting, bending, climbing, and twisting aggravates his pain symptoms."), R. 1327 (3/1/19) (noting that standing, sitting, sleeping too long, lifting weight aggravates chronic back pain), R. 1333 (5/24/19) ("Ambulation walking make it worse.").

locking." R. 728 (8/20/19). Dr. LaFleur also stated that the pain causes Plaintiff "reduced activity, inability to work normally, reduced recreational activities, poor sleep." R. 729 (8/20/19).

### B. Plaintiff's mental impairments are severe under the *Stone* standard.

The record shows the challenges Plaintiff has managing his mental health. Plaintiff was diagnosed with bipolar I disorder in 2004. R. 384 (3/6/19). At the hearing, Plaintiff stated that he has also had depression for years. R. 53. In 2019, Dr. Sims and nurse practitioner Gwendolyn DeJean assessed Plaintiff with severe depression during several depression screenings.[16] From February 21, 2019 to March 1, 2019, Plaintiff was hospitalized at Behavioral Hospital of Bellaire for psychiatric concerns and chemical dependency treatment. R. 383–400 (3/6/19). Records from that hospitalization note that Plaintiff has "poor coping" and a worsening mental health following the death of his mother in June 2018. R. 1306 (2/21/19). In 2019, Plaintiff reported hearing voices that are threatening in nature, telling him "I will kill you," and having auditory hallucinations of gunshots at night.[17] Plaintiff further reported seeing visual hallucinations of shadows and visions

---

[16] R. 407 (3/14/19) (Dr. Sims assessed Plaintiff with severe depression), R. 411 (2/1/19) (same), R. 419 (10/19/18) (same), R. 696 (5/26/19) (same), R. 892 (5/30/19) (Nurse practitioner DeJean assessed Plaintiff with severe depression), R. 895 (5/26/19) (Dr. Sims assessed Plaintiff with severe depression), R. 900 (4/25/19) (Nurse practitioner DeJean assessed Plaintiff with severe depression), R. 912 (3/24/19) (Dr. Sims assessed Plaintiff with severe depression).

[17] R. 287 (3/2/19) (Plaintiff reported in Function Report that he hears voices), R. 294 (3/2/19) (same), R. 325 (6/7/19) (Plaintiff reported in Social Security Administration Disability Report that he hears voices), R. 384 (3/6/19) (Plaintiff admitted to Behavioral Hospital of Bellaire because he

14

of himself dying.[18] In 2018 and early 2019, treating medical providers noted that Plaintiff experienced "recurrent manic episodes."[19] Plaintiff stated at the hearing that he has previously tried to overdose on medications. R. 56. He also explained that he has had HIV for years, which causes him problems with depression, memory loss, and staying focused. R. 51–52. Although Plaintiff takes medications for his mental impairments, Plaintiff reported in his Function Report that the medications do not work. R. 288 (3/2/19).

Evidence also shows that Plaintiff's mental impairments disrupt his ability to work. Plaintiff reported to nurse practitioner DeJean how his paranoia, anxiety, and manic episodes have made it difficult for him to hold a job.[20] In March 2019, a treating physician at Behavioral Hospital of Bellaire noted that financial stressors

---

reported hearing voices), R. 885 (6/27/19) (Plaintiff reported hearing voices to Nurse practitioner DeJean ), R. 1273 (3/6/19) (Plaintiff admitted to Behavioral Hospital of Bellaire because he reported hearing voices), R. 1275 (2/23/19) (Plaintiff hospitalized at Behavioral Hospital of Bellaire because he reported hearing voices), R. 1289 (2/21/19) (Plaintiff reported during intake at Behavior Hospital of Bellaire that he hears voices), R. 1292 (2/21/19) (same), R. 1298 (2/21/19) (same).

[18] R. 1273 (3/6/19) (Plaintiff reported to physician at Behavioral Hospital of Bellaire that he has visual hallucinations), R. 1289 (2/21/19) (Plaintiff reported during intake at Behavior Hospital of Bellaire that he has visual hallucinations), R. 1292 (2/21/19) (same), R. 1298 (2/21/19) (same).

[19] R. 585 (8/21/18) (Nurse practitioner Joy Ann James noted Plaintiff has active recurrent manic episodes), R. 590 (8/1/18) (same), R. 595 (7/17/18) (same), R. 1364 (10/17/18) (Nurse practitioner Annie Law assessed Plaintiff with recurrent manic episodes), R. 1368 (8/21/18) (same), R. 1405 (1/22/19) (Nurse practitioner Manju Sunil Menon noted Plaintiff has active recurrent manic episodes).

[20] R. 885 (6/27/19) ("[Plaintiff] states has a difficult time keeping jobs."); *see also* R. 324 (6/7/19) (noting in Disability Report that Plaintiff "quits every job because he hear everyone plotting against him. He has had several jobs this year that he quits for the same reasons, hearing voices").

and job stressors were triggers for Plaintiff's mental health symptoms. R. 1325 (3/1/19). The physician also noted that Plaintiff experienced decreased concentration because of his mental impairments. R. 1325 (3/1/19). Plaintiff stated several times that these hallucinations prevent him from sleeping properly and cause paranoia.[21] Lastly, Plaintiff reported in his Function Report that he started and stopped projects at work and was unable to remember instructions from his manager. R. 315 (4/25/19).

### C. Plaintiff's *de minimis* burden at step two does not require Plaintiff to prove that he is disabled.

The Commissioner agrees that the medical records support Plaintiff's diagnoses of degenerative disc disease of the lumbar spine, depressive disorder, bipolar disorder, obesity, and asymptomatic HIV, but argues that the mere diagnosis of an impairment does not establish a disabling impairment and that Plaintiff must show that he is so functionally impaired that he is precluded from engaging in any substantial gainful activity. ECF No. 18-1 at 9 (citing *Hames v. Heckler*, 707 F.2d

---

[21] R. 289 (3/2/19) (Plaintiff reported in Function Report that he gets anxious and manic), R. 316 (4/25/19) (Plaintiff reported in Function Report that he had not slept for 4 to 5 days), R. 384 (3/6/19) (Plaintiff reported to physician at Behavioral Hospital of Bellaire that he is unable to sleep), R. 454 (10/12/17) (Plaintiff reported to nurse practitioner DeJean that he sleeps one to two hours), R. 471 (5/31/17) (Plaintiff reported to Dr. Amina Abdula that he does not sleep), R. 1273 (3/6/19) (Plaintiff reported to physician at Behavioral Hospital of Bellaire that he is unable to sleep), R. 1275–76 (2/23/19) (Plaintiff reported to physician at Behavioral Hospital of Bellaire that he is unable to sleep and gets paranoid).

162, 165 (5th Cir. 1983) (per curiam)). The Commissioner confuses Plaintiff's burden for proving his disability claim with his *de minimis* burden at step two.

The Commissioner is correct that a diagnosis is not *per se* disabling. *Hames*, 707 F.2d at 165 ("The mere presence of some impairment is not disabling per se."). However, Plaintiff's *de minimis* burden at step two is a low standard that does not equate to substantiating the entirety of his disability claim. *Calderwood v. Colvin*, No. 4:14-CV-00495-CAN, 2016 WL 1077956, at *9 (E.D. Tex. Mar. 18, 2016) (citing *Stone*, 752 at 1103–04 (5th Cir. 1985)) ("Step two's 'severe impairment' analysis is a low burden for the Plaintiff."); *see also Loza*, 219 F.3d at 390 (noting that steps one and two involve "threshold determinations"); *Hermann v. Comm'r of Soc. Sec.*, 317 F. Supp. 3d 900, 910 (N.D. Miss. 2018) ("[Step two] functions as a 'pass/fail' system, rather than attempting meaningful evaluation of an impairment in any common-sense meaning of the word 'severe.'"). At step two, Plaintiff need only prove that his impairments are more than a "'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Loza*, 219 F.3d at 391.

Since Plaintiff's physical and mental impairments are more than a slight abnormality that would not be expected to interfere with his ability to work, the ALJ erred when he found that Plaintiff's impairments are not severe.

### 3. *The ALJ's error harmed Plaintiff, requiring remand.*

"Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106. However, an error at step two of the sequential analysis may constitute harmless error when the ALJ continues to the next step of the disability analysis or the result would be the same had the ALJ applied the correct severity standard. *Foster*, 2011 WL 5509475, at 12-19 (analyzing various scenarios under which the Fifth Circuit determined whether a step two error required reversal); *see, e.g., Garcia v. Berryhill*, 880 F.3d 700, 705 n.6 (5th Cir. 2018) ("Any error at step two would likewise be harmless, given that the ALJ concluded at step four, on the basis of substantial evidence, that Garcia retained the ability to perform his past relevant work as a produce broker."); *LeBlanc v. Chater*, 83 F.3d 419, 1996 WL 197501, at *2 (5th Cir. 1996) (per curiam) ("[W]here the evidence supports the ALJ's findings under either [the *Stone* or CFR standard], it is imprudent to remand solely for the district court to chant the magical 'slight impairment' incantation in its opinion."); *Dunham v. Berryhill*, No. H-17-2641, 2018 WL 6574838, at *5 (S.D. Tex. Nov. 21, 2018) ("Under the sequential analysis framework, error at step two rarely constitutes reversible error, where, as here, the ALJ conducts the remaining steps of the five-step sequential analysis.").

Because the ALJ did not proceed past step two after failing to articulate or apply the correct legal standard and the evidence does not support the ALJ's step

two findings using the correct legal standard, the Court finds that the ALJ's error harmed Plaintiff and remands this matter for reconsideration of the record. *See Garcia*, 880 F.3d at 705 n.6; *LeBlanc*, 1997 WL 197501, at *2.[22]

## V.  CONCLUSION

The Court **GRANTS** Plaintiff's motion for summary judgment, ECF No. 17, and **DENIES** Commissioner's motion for summary judgment, ECF No. 18. The Commissioner's decision denying Plaintiff benefits is **VACATED**. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this opinion. This case is **DISMISSED**.

**SIGNED** on December 5, 2021, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[22] As the Court finds that the ALJ committed harmful error when he applied the wrong legal standard in determining that Plaintiff's medical conditions were not severe, the Court declines to address Plaintiff's remaining argument that the ALJ erred by not including an individualized assessment of his obesity. *See, e.g.*, *McNickles v. Thaler*, No. H-10-3493, 2012 WL 568069, 2012 WL 568069, at *5 (S.D. Tex. Feb. 21, 2012) (declining to address alternative summary judgment ground because respondent was already entitled to summary judgment). This issue can be addressed on remand.